IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIRSTMERIT BANK, N.A. *an Ohio corporation*, <br> Plaintiff, <br><br> v <br><br> GEORGE L. MYRTER, ELEANOR MYRTER *Pennsylvania residents* and JL PROPERTIES, LLC *Pennsylvania limited liability company* <br> Defendants. | 2:15-cv-333 |

**MEMORANDUM OPINION AND ORDER OF COURT**

Now pending before the Court are the PETITION FOR APPOINTMENT OF RECEIVER (ECF No. 8) filed by Plaintiff FirstMerit Bank, N.A. ("FirstMerit" or "the Bank") and the MOTION TO DISMISS (ECF No. 21) filed by two of the three named Defendants, George and Eleanor Myrter.[1] Both motions have been thoroughly briefed and the parties have submitted numerous exhibits (ECF Nos. 1, 9, 16, 17, 19, 22, 23, 24). The motions are ripe for disposition without the necessity of an evidentiary hearing.

Factual and Procedural Background

This complex case arises out of the efforts of FirstMerit to foreclose on its security interests for various business loans, against a backdrop of bankruptcy. The borrower on several of the loans at issue is Castle Cheese, Inc. ("Castle Cheese"), which is a private corporation controlled by Defendant George Myrter. On May 30, 2014, Castle Cheese filed a bankruptcy petition under Chapter 11 (reorganization). On May 12, 2015, upon the motion of FirstMerit, Chief Bankruptcy Judge Jeffrey A. Deller entered an Order which converted the Castle Cheese

---
[1] The third named Defendant, JL Properties, LLC ("JL Properties"), has filed an Answer. *See* ECF No. 23.

case to a liquidation matter pursuant to Chapter 7 of the Bankruptcy Code. Charles O. Zebley, Jr. was appointed as the Interim Trustee for Castle Cheese.

A. The Real Property At Issue

In this action, the Bank seeks to foreclose and effectuate the sale of various parcels of real property. The Bank has attempted to define the "2850 Premises" to encompass all real property with a mailing address of 2850 Perry Highway, Slippery Rock, PA 16057. The Bank's proposed definition blurs an important distinction. The underlying documents establish that the real property is divided into two separate parcels. Parcel No. 1 (Parcel ID # 30-070800) is owned by Defendants George and Eleanor Myrter, husband and wife, as tenants by the entireties. *See* Deed to Parcel No. 1 (ECF No. 34 Exh. 1). Parcel No. 2 (Parcel ID # 30-098200) is owned by JL Properties. *See* Deed to Parcel No. 2 (ECF No. 17 Exh. 2). The Mortgage and Assignment of Rents documents, dated April 20, 2007, expressly state that they are being executed by George and Eleanor Myrter, husband and wife, as to Parcel No. 1 and by JL Properties as to Parcel No. 2. *See* Complaint Exhibits H, I.[2]

In addition to Parcel No. 2, JL Properties also owns the real property located at 2862 Perry Highway (the "2862 Premises") and at 1167 Stoughton Road, Slippery Rock, PA (the "Stoughton Premises"). Castle Cheese and Universal Cheese & Drying, Inc. ("Universal Cheese")[3] are tenants of Defendants. A factory is located on Parcel No. 1. An office building and a warehouse are physically located on Parcel No. 2; however, the mailing address of the

---

[2] The February 17 and June 18, 2004 mortgages (Complaint Exhibits D and F) do not contain such clear explanatory language but do reflect that the agreements are being made by George and Eleanor Myrter as "Husband and Wife." Moreover, each of the mortgages and associated Assignment of Rents documents contain an attachment which identifies the two separate parcels. The Deed to the Myrters as tenants by the entireties for Parcel No. 1 (the authenticity of which is undisputed) is dated February 12, 1992 – prior to any of the mortgages to FirstMerit. The Deed to JL Properties for Parcel No. 2 is dated October 23, 2002. Neither party has alleged that there has been a subsequent conveyance or change in ownership regarding either Parcel.

[3] Universal Cheese is a separate corporation that is allegedly controlled by George Myrter.

2

warehouse appears to correspond to the Stoughton Premises. An office building is located on the 2862 Premises.

B.  The Key Documents and Disputes

Commencing on January 22, 2003 FirstMerit extended a line of credit to Castle Cheese (Loan No. 55209).  The line of credit was amended numerous times through December 2011. On June 24, 2008, FirstMerit extended a line of credit to Universal Cheese, which was subsequently amended several times (Loan No. 54919).  On May 10, 2010, First Merit loaned $500,000 to Universal Cheese (Loan No. 10068).  On December 8, 2011 FirstMerit loaned Castle Cheese $1,385,000.00 (Loan No. 9343).  Also on December 8, 2011 FirstMerit loaned $850,000 to Universal Cheese (Loan No. 7654).

As security for the various loans, Defendants executed five duly recorded mortgages to FirstMerit.  In addition, FirstMerit obtained Assignment of Rents agreements from Defendants. The Bank alleges that Castle Cheese and Universal Cheese have neglected and failed to make contractually-obligated rent payments to the Bank.  On February 18, 2015, FirstMerit demanded that the rent be paid directly to the Bank, pursuant to the terms of the Assignment of Rents agreements.  Defendants contend that Castle Cheese and Universal Cheese did not fail to make required rent payments because such rental payments had been waived by Defendants in their capacity as landlords since some time in 2013.  The Bank asserts that it was not aware of any rent-waiver arrangement by these related parties.

The mortgage and Assignment of Rents documents define various events of default. Relevant to this litigation, in addition to the alleged non-payment of rents by Castle Cheese and Universal Cheese, FirstMerit alleges an "Over-Advance Default" for Castle Cheese having failed

3

to remit payments to cure the difference between the outstanding principal balance of the Advances and the Borrowing Base, despite the Bank's demands in February and April 2014; and a "Material Adverse Change" default which resulted from Castle Cheese having filed for bankruptcy in May 2014. Complaint ¶¶ 38-44 . The applicable documents also contain "cross default" and "cross collateralization" provisions, such that an event of default under any one agreement constitutes a default on all of the other agreements. Because Loan No. 55209 to Castle Cheese was guaranteed by Universal Cheese, the Bank contends that the alleged event(s) of default by Castle Cheese constitute cross-defaults of the Universal Cheese loans. Because George Myrter and JL Properties guaranteed the loans of Castle Cheese and Universal Cheese, the Bank asserts its ability to pursue its contractual rights against them.

The security documents afford numerous rights and remedies to FirstMerit. Of particular relevance to the pending motions, the mortgages and Assignment of Rents documents provide for the appointment of a receiver. Upon any Event of Default, the Bank "shall have the right to have a receiver appointed to take possession of all or any part of the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. . . . Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver."

Also relevant and of importance to the pending motions, on December 8, 2011 FirstMerit executed a Release of the commercial guarantees of Eleanor Myrter (the "Release"). The Release stated, in relevant part, that: "The Unconditional and Unlimited Guarantees by and between Eleanor and FirstMerit Bank, N.A. ("FirstMerit") concerning the following

indebtedness to FirstMerit is hereby terminated in its entirety." The release recited various matters related to Castle Cheese, Universal Cheese, JL Properties and George Myrter, although it did not specifically reference Loan Nos. 7654 or 9343.

      C. The Legal Claims of the Bank

On March 10, 2015, FirstMerit filed a four-count Complaint in Mortgage Foreclosure. Count I seeks judgment in foreclosure on Mortgages I, II, III and IV, which relate to security interests in that which the Bank has defined as the "2850 Mortgaged Premises."[4] Count II seeks judgment in foreclosure on Mortgage V, which relates to the 2862 Mortgaged Premises and the Stoughton Mortgaged Premises, both of which are owned by JL Properties. Count III seeks judgment in foreclosure under the "cross default" provisions of loans made by FirstMerit to Universal Cheese. Count IV of the Complaint seeks appointment of a Receiver. In addition, FirstMerit filed a separate motion (ECF No. 8) in which it seeks the emergency appointment of a Receiver.

Partial Motion to Dismiss

The Motion to Dismiss is filed on behalf of both George and Eleanor Myrter.[5] The Myrters present two, related arguments. Initially, they contend that FirstMerit unconditionally released all of its claims against Eleanor. Second, they contend that as a consequence of the release of Eleanor, the Bank is unable to reach any property owned by George and Eleanor Myrter as tenants by the entireties. The Myrters reason that because 2850 Parcel No. 1 is owned

---

[4] As explained above, the Bank seeks to foreclose on both Parcel Nos. 1 and 2. Also, Mortgage IV appears to relate to both the 2862 Premises and Stoughton Premises, but not the 2850 Premises. See Complaint ¶ 17.
[5] On June 24, 2015, as the Court was preparing to file this Memorandum Opinion, FirstMerit filed a Notice of Bankruptcy as to George Myrter. Pursuant to the automatic stay in 11 U.S.C. § 362(a), this action will be **STAYED** as to George Myrter only.

5

as tenants by the entireties and FirstMerit's claims against them pertain only to that parcel, all claims against the Myrters should be dismissed.

Although the Bank concedes that the Myrters are listed as tenants by the entireties on the Deed to 2850 Parcel No. 1, it contends that the Myrters destroyed the entireties nature of their ownership of Parcel No. 1 by having executed and delivered mortgages jointly with a third party, JL Properties, for the 2850 Premises as a whole. In addition, the Bank contends that the Release of Eleanor was not universal, as the Release document does not recite Loan Nos. 7654 or 9343.

In its consideration of a motion to dismiss, the Court can consider the exhibits attached to the Complaint, matters of public record and documents (of undisputed authenticity) that form the basis of a claim. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may consider documents integral to or explicitly relied upon in the complaint, or where the claims are based on such documents). Obviously, as both parties recognize, this is a document-intensive case and the claims of the Bank are based upon the documents submitted by the parties. The Court will now address the disputed legal issues.

A. Release of Eleanor

The parties dispute the scope of the Release. The Myrters argue that the Release discharged <u>all</u> of Eleonor's personal guarantee obligations to FirstMerit. In response, it appears that the Bank concedes the validity of the Release as to the matters recited therein. However, the Bank contends that the Release is not effective as to Loan Nos. 7654 or 9343 because those loans are not specifically recited in the Release, and the Bank therefore seeks to implement the cross-default provisions. The Myrters rejoin that Loans 7654 and 9343 were executed on December 8, 2011 -- the same day as the Release. The Myrters reason that it was not necessary to recite or

6

itemize Loan Nos. 7654 or 9343 in the Release because such loans were not executed until the close of business, after the Release had become effective.

An evidentiary hearing is not necessary to resolve this dispute. Eleanor Myrter did not sign/execute any of the documents related to either Loan 7654 or Loan 9343. The Bank has not pled in the Complaint that Eleanor is liable to it pursuant to Loan 7654 and the Notice of Default Letters (Complaint Exhibits BB and CC) reflect that Loan 7654 was guaranteed only by Castle Cheese, and George Myrter, but not Eleanor. *See also* Complaint ¶ 76-77. Even more clearly, FirstMerit has affirmatively pled that the indebtedness on Loan 9343 had been guaranteed only by George Myrter, Universal and JL Properties, but not Eleanor. Complaint ¶ 21. In sum, the Bank has not pled the existence of any guarantees of Eleanor which have not been released. Thus, all of the claims asserted by the Bank against Eleanor in this case must be dismissed.

B. Entireties Property

The Court will now address the Bank's right and/or ability to foreclose upon the 2850 Perry Highway Parcel No. 1, which is owned by George and Eleanor as tenants by the entireties. The gravamen of the Bank's argument is as follows: (1) the relevant real property to consider is 2850 Perry Highway as a whole, rather than Parcel No. 1 and Parcel No. 2 separately; and (2) the act of executing a joint mortgage with JL Properties changed the exclusive husband and wife ownership of the 2850 Premises. The Bank points out that JL Properties is a separate entity in which George and Eleanor have unequal ownership. FirstMerit cites *General Credit Co. v. Cleck*, 609 A.2d 553, 557 (Pa. Super. 1992), for the proposition that execution of a mortgage by <u>less</u> than all of the joint tenants severs a joint tenancy. The Bank then theorizes that execution of

7

a mortgage by <u>more</u> than the husband and wife should sever a tenancy by the entireties. The Court is not persuaded.

The United States Court of Appeals for the Third Circuit summarized the principles of Pennsylvania law which govern tenancy by the entireties in *In re Brannon*, 476 F.3d 170 (3d Cir. 2007). It is an ancient common law doctrine based on the legal fiction that husband and wife are one person. The essential characteristic is that neither husband nor wife owns any undivided share at all; both together, as a single entity, own the whole, or entire, estate. Five unities must exist to establish a tenancy by the entireties (interest, title, time, possession and marriage.) A tenancy by the entireties is terminated if any one of such unities are destroyed.

The Bank's analogy to joint tenancy is unpersuasive. In *Beihl v. Martin*, 84 A. 953, 954 (Pa. 1912), the Pennsylvania Supreme Court explained that it is the "striking peculiarity of the estate—the entirety alike in husband and wife—that operates to exempt it from execution and sale at the suit of a creditor of either separately." As the Third Circuit Court of Appeals has recognized: "A tenancy by the entireties has a number of unique features designed to protect the property of husband and wife." *In re Brannon*, 476 F.3d at 176. The *In re Brannon* Court declined to weaken the time-honored policy of shielding marital property in the context of a bankruptcy filing by one spouse. The "only" established ways in which a tenancy by the entireties may be severed are: (1) the death of one of the spouses; (2) a joint conveyance of the estate; (3) divorce; or (4) mutual agreement, either express or implied. *Id*. at 173.

None of these events has occurred in this case. The Myrters delivered to FirstMerit a mortgage lien on their interest in Parcel No. 1 and JL Properties delivered a mortgage lien on its interest in Parcel No. 2. Put another way, the Myrters' ownership of Parcel No. 1 as tenants by the entireties was not destroyed by having executed the mortgage because JL Properties had no

8

ownership interest in Parcel No. 1 to convey to the Bank. Thus, there was no three-way ownership of either parcel. In any event, the Myrters' act of having executed a mortgage did not constitute a transfer of title to the property. Pennsylvania law subscribes to the lien theory of mortgages, i.e., a mortgage does not transfer title to the mortgagee; rather, it constitutes a lien on the mortgagor's interest, having thereby secured the mortgagee's loan. *General Credit Co.*, 609 A.2d at 557 (citing *In re City of Philadelphia*, 63 A.2d 42 (1949)).

The cases cited by the Bank are unhelpful to it under the facts and circumstances of this situation. In *Gen. Credit Co.*, the Court explained that "the action of both joint tenants in executing a mortgage for the purchase price of property jointly held did not destroy any of the four unities necessary for a joint tenancy with right of survivorship; consequently, the joint tenancy was not severed." *Id*. at 557. The joint tenancy is severed only if one of the joint tenants does not execute the mortgage. *Id*. In this case, both George and Eleanor Myrter as husband and wife executed the mortgage. *Mauser v. Mauser*, 192 A.137 (Pa. 1937), is entirely distinguishable because that case involved a bank account in the names of three people. In *Heatter v. Lucas*, 80 A.2d 749 (Pa. 1951), the Court held exactly opposite of that suggested by the Bank. The property at issue was deeded to a husband and wife and their unmarried son. The presence of a third person on a conveyance did <u>not</u> destroy the entireties nature of the husband/wife ownership interest. To the contrary, even though three persons were named in the conveyance, the Court concluded that the husband and wife owned a one-half share as tenants by the entireties. Also applicable to this case, the *Heatter* Court looked to the deed to determine ownership of real estate. Here, the Deed to 2850 Perry Highway Parcel No. 1 is specifically in the names of George and Eleanor Myrter, as husband and wife. The Court concludes that Parcel No. 1 is held as tenants by the entireties.

9

"Entireties property may not be accessed by the creditors of only one spouse." *Id*. at 173. Indeed, as explained in *Napotnik v. Equibank and Parkvale Savings Association*, 679 F.2d 316, 319 (3d Cir. 1982), this exemption from the ordinary legal process to which all other estates are subject is the chief distinguishing characteristic of an estate by the entireties. If, as in this case, only one spouse is a debtor, the entireties property is immune from process, petition, levy, execution or sale. *See ISN Bank v. Rajaratnam*, 83 A.3d 170, 174 (Pa. Super. Ct. 2013) (citations omitted) ("The judgment creditor has only a potential lien against property held by the entireties based on the debtor spouse's expectancy to become sole owner.")

The Bank has strenuously maintained that this action is *in rem*, i.e., directed at property rather than toward a particular person. *See* ECF No. 33 at 2. Thus, the Court need not consider whether or not FirstMerit may be able to obtain an in personam judgment against George. *See ISN Bank*, 83 A.3d at 170 (bank able to pursue action against one spouse on guarantee agreement, although not able to execute on entireties property). The Court notes that the only property allegedly owned by George Myrter is 2850 Parcel No. 1, which is presently immune from process.[6] However, as a result of the Notice of Bankruptcy, this action must be automatically stayed as to George Myrter. However, the Bank may still pursue its *in rem* claims against Parcel No. 2, the 2862 Premises and the Stoughton Road Premises, as those properties are owned by JL Properties.

---

[6] If the tenancy by the entireties as to Parcel No. 1 ends and George becomes the owner, and the bankruptcy stay is lifted, then FirstMerit may be able to pursue/advance a claim against that property. Under Pennsylvania law, a judgment against one spouse creates an "inchoate" lien on real property owned by the debtor which will ripen into an enforceable lien if the debtor's marriage ends (by divorce or death) and if he then becomes the owner of the realty. *In re Cossman*, 2004 WL 5865047, at *3 (Bankr. E.D. Pa. May 13, 2004) (citing *In re Hope,* 77 B.R. 470 (Bankr. E.D. Pa. 1987)). Such a lien is inchoate because it is not presently enforceable. *Id. Accord Napotnik*, 679 F.2d at 319 ("At most, a creditor of either spouse may obtain a presently unenforceable lien upon that spouse's expectancy of survivorship—a lien that becomes enforceable only when the other spouse dies.").

In accordance with the foregoing, the MOTION TO DISMISS (ECF No. 21) will be **GRANTED** and Eleanor Myrter will be dismissed as a party to this case. The action will be **STAYED** as to George Myrter. The claims against JL Properties shall proceed.

Petition for Appointment of Receiver

FirstMerit has asked the Court to immediately appoint a receiver. The Bank submits that such receiver should have the power to operate and manage all of the properties referenced in the Complaint (including both Parcels at 2850 Perry Highway) and to require the tenants to pay all rents due. The receiver would be authorized to conduct a foreclosure sale. The Defendants would be deprived of all possessory and management rights as to the properties.

In *Manufacturers & Traders Trust Co. v. Minuteman Spill Response, Inc.*, 999 F. Supp. 2d 805 (W.D. Pa. 2013) (Gibson, J.) this Court thoroughly articulated the legal principles which govern requests for appointment of a receiver. A receivership is an "extraordinary" or "drastic" remedy that is justified only in extreme situations. *Id.* at 816. Because appointment of a receiver unquestionably interferes with an individual's right to control his or her property, a district court should appoint a receiver only in cases of necessity. The requesting party must clearly and satisfactorily show: (1) that an emergency exists; and (2) that the receiver is needed to protect its property interests. *Id.* (citations omitted).

The decision to appoint a receiver rests within the sound discretion of the trial court. *Id.* There is no precise formula for determining whether a receiver should be appointed. As set forth in *Minuteman Spill*, a federal district court may consider the following equitable factors:

(1) the probability of the plaintiff's success in the action;
(2) the possibility of irreparable injury to the plaintiff's interests in the property;
(3) the inadequacy of the security to satisfy the debt;

(4) the probability that fraudulent conduct has occurred or will occur to frustrate the plaintiff's claim;
(5) the financial position of the debtor;
(6) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;
(7) the inadequacy of available legal remedies;
(8) the lack of a less drastic equitable remedy; and
(9) the likelihood that appointing a receiver will do more harm than good.

FirstMerit contends that appointment of a receiver is necessary because: (1) Defendants have failed to remit and/or account for rent payments; (2) Defendants have violated the Assignment of Rents agreements; (3) the landlords and tenants are related entities; and (4) to preserve the value of the premises.  Paragraph 84 of the Complaint avers:  "Upon information and belief, the Mortgaged Premises are in imminent danger of being lost, injured, dissipated, diminished in value or squandered."  The Bank further argues that appointment of a receiver is warranted because each of the mortgages and Assignment of Rents agreements contain an "Appoint Receiver" clause among the Bank's rights and remedies.

     Defendants vigorously oppose appointment of a receiver.  They deny that there has been any failure to assign rents.  To the contrary, Defendants contend that there are simply no rents to assign because "since at least 2013" they have waived the duty of Castle Cheese or Universal to pay any rent on the premises.  Further, Defendants argue that the rent-waivers were fully known to FirstMerit.  The Bank disclaims any such knowledge.  Defendants deny that there has been any waste, fraud or imminent danger of injury or diminishment in property value.

     The Court concludes that an evidentiary hearing is not necessary to resolve this motion.  The Court will assume, arguendo, that Defendants have failed to remit rent payments and that the rent-waiver agreement between related entities was designed to avoid that duty.  Nevertheless, Plaintiff has fallen far short of the standard necessary to justify the extraordinary relief sought.

There have been absolutely no facts alleged regarding waste, fraud, or imminent danger of diminished value. The Complaint, motion, brief and supporting documents by FirstMerit contain only wholly conclusory allegations. The Bank has also failed to plead facts which arise to an emergency – the alleged defaults have been ongoing for over a year. *See* Demand Letters from February and April, 2014. Castle Cheese filed for bankruptcy in May 2014. Since then, some of the Bank's concerns have been substantially mitigated by the appointment of an independent trustee for Castle Cheese, such that the landlord and tenant are no longer controlled by related entities. Even more significantly, given the Chapter 7 liquidation of Castle Cheese, it is unlikely that a receiver, even if appointed, would be able to obtain remittance of rents from Castle Cheese. *See* FirstMerit Reply Brief (ECF No. 19) at 5 n.9. Thus, appointment of a receiver is likely to do more harm than good. As the Court has concluded above, FirstMerit has no valid claims against Eleanor Myrter and is unable to execute on the entireties property interest at 2850 Perry Highway Parcel No. 1. Any attempt to collect rent from Universal Cheese would be improper, as it has not been named as a party to this case.

Although the contractual "Appoint Receiver" provisions permit the Court to appoint a receiver, such appointment is not required. In *Minuteman Spill*, the contractual documents similarly authorized a receivership. Nevertheless, Judge Gibson thoroughly considered the equitable factors, exercised his discretion, and determined that appointment of a receiver was not justified. 999 F. Supp.2d at 825, 826-27. As relevant to this case, Judge Gibson explained that "financial stress alone is an insufficient reason to justify the extraordinary remedy at issue"; and noted that the bank had a viable legal remedy because it could call its loans due and foreclose.

13

In accordance with the foregoing, the PETITION FOR APPOINTMENT OF RECEIVER (ECF No. 8) will be **DENIED**.

An appropriate Order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIRSTMERIT BANK, N.A.** *an Ohio corporation*, <br>                 Plaintiff, <br><br> v <br><br> **GEORGE L. MYRTER, ELEANOR MYRTER** *Pennsylvania residents* **and JL PROPERTIES, LLC** *Pennsylvania limited liability company* <br>                 Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | **2:15-cv-333** |

## ORDER OF COURT

AND NOW, this 25th day of June, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that the PETITION FOR APPOINTMENT OF RECEIVER (ECF No. 8) filed by Plaintiff FirstMerit Bank, N.A. is **DENIED** and the MOTION TO DISMISS (ECF No. 21) filed by Defendant Eleanor Myrter is **GRANTED**. The case is hereby **STAYED** as to Defendant George Myrter pursuant to 11 U.S.C. § 362(a). The case shall proceed as to Defendant JL Properties, LLC.

The caption of this case is hereby amended as follows:

| | | |
|---|---|---|
| **FIRSTMERIT BANK, N.A.** *an Ohio corporation*, <br>                 Plaintiff, <br><br> v <br><br> **JL PROPERTIES, LLC,** *a Pennsylvania limited liability company* <br>                 Defendant. | ) ) ) ) ) ) ) ) ) ) ) | **2:15-cv-333** |

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: **Elizabeth L. Slaby, Esquire**
Email: bslaby@clarkhill.com
**William C. Price**
Email: wprice@clarkhill.com
**Lauren D. Rushak**
Email: lrushak@clarkhillthorpreed.com

**Bruce E. Rende**
Email: brende@rlmlawfirm.com
**Craig W. Beil**
Email: cbeil@rlmlawfirm.com